**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x    Case No.

BRIA BROWN, *on behalf of herself and all*    :
*others similarly situated*,    :

            Plaintiff,    :
   :
   :
   :
   :    **CLASS ACTION COMPLAINT**
   :
   :
       - against -    :
   :
HARRY AND DAVID, LLC,    :    JURY TRIAL DEMANDED

          Defendant.
--------------------------------------------------------x

    Plaintiff BRIA BROWN, on behalf of herself and all others similarly situated, by her undersigned attorneys, as and for her Complaint against the Defendant, alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will be uncovered for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1.      This is a consumer protection action arising out of deceptive and otherwise improper business practices that Defendant, HARRY AND DAVID, LLC (hereinafter, "HARRY & DAVID" or "Defendant"), engages in with respect to the packaging of its 10 oz. Harry & David® Moose Munch® Gourmet Popcorn products in the Milk Chocolate, Dark Chocolate, Classic Caramel, and Cinnamon Maple Pecan flavors (collectively, the "Products"). The Products are sold in non-transparent cylindrical cardboard boxes and marketed extensively throughout the United States. They are available at numerous retail and online outlets such as Macy's, Lord & Taylor, the official Harry and David website, www.harryanddavid.com, and Amazon.com.

2.      Defendant, with intent to induce consumers to purchase its Products, manufactures, markets and sells the Products (i) in containers made, formed or filled as to be misleading and (ii) with excessive empty space (hereinafter, "non-functional slack-fill"), in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et. seq.*, as well as state laws prohibiting misbranded food with requirements identical to federal law.

3.      Upon information and belief, Defendant sold and continues to sell the Products in containers made, formed or filled as to be misleading and with non-functional slack-fill.

4.      The Products are packaged in transparent plastic pouches inside a non-transparent, cylindrical, thin cardboard box so that Plaintiff and Class members cannot see the non-functional slack-fill in the container. The thin cardboard box is unnecessary as the popcorn contained therein is already packaged in a sealed, tamper-proof package. As shown below, the size of the boxes in comparison to the volume of the Products contained therein makes it appear as though Plaintiff and Class members are buying more than what is actually being sold:

2

 

 

5.     For example, below are images of a container of the 10 oz. Moose Munch Gourmet Popcorn in the Milk Chocolate flavor. The popcorn is packaged in a clear plastic bag

3

before being placed in its non-transparent cylindrical cardboard box. The line indicates the approximate height of the popcorn product once it is poured into the container, which reaches little more than half of the total available space – only 4 inches out of a total height of 7 inches, about 57% of the available space, leaving 43% slack-fill:







6.      While some of Defendant's slack-fill may have functional justifications related to packaging requirements, Defendant's total slack-fill exceeds the amount necessary for this. This is proven by the fact that the slack-fill in Defendant's Products is significantly greater than the slack-fill in the packaging of comparable gourmet popcorn products. Below is a similar gourmet popcorn product from GiftPop that contains a low amount of non-functional slack-fill:



APPROXIMATE LINE OF FILL



7.    Plaintiff and Class members viewed Defendant's misleading Products packaging, and reasonably relied in substantial part on its implicit representations of quantity and volume when purchasing the Products. Plaintiff and Class members were thereby deceived into deciding to purchase the Products, whose packaging misrepresented the quantity of popcorn contained therein.

8.    Plaintiff brings this proposed consumer class action on behalf of herself and all other persons in New York who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale.

9.      During the Class Period, Defendant manufactured, marketed and sold the Products throughout the State of New York. Defendant purposefully sold the Products with non-functional slack-fill as part of a systematic practice.

10.     Defendant violated statutes enacted in New York that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

11.     Defendant has deceived Plaintiff and other consumers throughout New York by misrepresenting the actual volume of its Products, inducing Plaintiff and Class members to reasonably rely on Defendant's misrepresentations and purchase the Products when they would not have purchased otherwise (or would not have purchased at their given purchase prices). Defendant has been unjustly enriched as a result of its unlawful conduct. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Products that it would not have otherwise earned. Plaintiff brings this action to stop Defendant's deceptive practice.

12.     Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

14.     The Court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed and sold throughout New York State. Defendant engaged in the wrongdoing alleged in this Complaint in New York State; Defendant is authorized to do

business in New York State.  Defendant has sufficient minimum contacts with New York and has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

15.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff BROWN's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff BROWN purchased Defendant's Products in New York County. Moreover, Defendant distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

### Plaintiff

7.     Plaintiff BRIA BROWN is, and at all relevant times hereto has been, a citizen of the state of New York and resides in Queens County. Plaintiff BROWN purchased the 10 oz. Harry & David® Moose Munch® Gourmet Popcorn Product in the Milk Chocolate flavor (hereinafter, the "Purchased Product") for personal consumption within the State of New York. Plaintiff BROWN purchased the Product at a Macy's retail store location in New York. Plaintiff BROWN purchased the Product for $7.99, and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

16.     As a result of Defendant's deceptive conduct as alleged herein, Plaintiff BROWN was injured when she paid a premium price for the Product. She paid $7.99 for the Product on the reasonable assumption that the non-transparent cylindrical cardboard box was filled to functional capacity. She would not have paid this sum had she known that the non-transparent cylindrical cardboard box was more than half empty or had the cylindrical cardboard box been proportioned to its actual contents. Defendant promised Plaintiff BROWN a full container of

popcorn for $7.99, but only delivered little more than half a container, depriving her of the benefit of her bargain. Accordingly, she was injured in the amount of the percentage of the purchase price equal to the percentage of non-functional slack-fill in the Product. Should Plaintiff BROWN encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging.

***Defendant***

17.     Defendant HARRY AND DAVID, LLC is a corporation organized under the laws of Oregon with its headquarters at 2500 S Pacific Highway, Medford, OR 97501 and an address for service of process of: C/O Corporation Service Company, 1127 Broadway Street NE Ste 310, Salem, OR 97301. Defendant manufactured, packaged, distributed, advertised, marketed and sold the Products to millions of customers nationwide.

18.     The labeling, packaging, and advertising for the Products, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Products. Defendant owned, marketed and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## FACTUAL ALLEGATIONS

## Identical Federal and State Law Prohibit Misbranded Foods with Non-Functional Slack-Fill

19.     Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading."

20.    The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

21.    The food labeling laws and regulations of New York impose requirements which mirror federal law.

22.    New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

"For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10…." 1 NYCRR § 259.1(a)(2).

23.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349.  *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

**Defendant's Products Contain Slack-Fill**

24.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained within it.

25.     Defendant's Products contain substantial slack-fill of 43%.

**Defendant's Slack-Fill is Non-Functional**

26.     The FDA has defined non-functional slack-fill as any slack-fill in excess of that required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in § 100.100(a) apply to that portion of the slack-fill within a container that is necessary for, or results from, a specific function or practice, e.g., the need to protect a product. Slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill. Thus, the exceptions in § 100.100(a) provide only for that amount of slack-fill that is

13

necessary to accomplish a specific function. FDA advises that <u>these exceptions do not exempt broad categories of food</u>, such as gift products and convenience foods, from the requirements of section 403(d) of the act. For example, § 100.100(a)(2) recognizes that some slack-fill may be necessary to accommodate requirements of the machines used to enclose a product in its container and is therefore functional slack-fill. However, § 100.100(a)(2) <u>does not exempt all levels of slack-fill in all mechanically packaged products from the definition of nonfunctional slack-fill.</u> [emphasis added] 58 FR 64123, 64126

27.     Thus, the possibility that some portion of the slack-fill in Defendant's Products may be justified as functional based on the exemptions in §100.100(a) does not justify slack-fill that is in excess of that required to serve a legitimate purpose—protecting contents, accommodating the machines that enclose the contents, accommodating settling, etc.  Such slack fill serves no purpose other than to mislead consumers about the quantity of food they are actually purchasing.  *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1–6).").

28.     The fact that Defendant's Products contain slack-fill in excess of what is permitted under § 100.100 is proven by the fact that competitor products contain significantly less slack-fill. As shown above, the similar gourmet popcorn products of Defendant's competitors contain significantly less slack-fill, and thus more popcorn, notwithstanding factors such as the need to protect package contents or accommodate machines and settling.

29.     The comparison is between the same kind of product in the same kind of packaging that is enclosed in the same way by the same kind of technology. And yet Defendant's competitors manage to package their popcorn in a way that leaves consumers with a more accurate sense of how much food they are actually purchasing. Thus, whatever real constraints <u>might</u> justify the slack-fill in the competitor popcorn cannot explain the excess slack-fill in the Products.

14

**Defendant's Non-Functional Slack-Fill is Deceptive and Misleading**

30.     The real explanation lies in Defendant's desire to mislead consumers about how much product they are actually purchasing and thus increase sales and profits.  Defendant uses non-functional slack-fill to mislead consumers into believing that they are receiving more popcorn than they are actually receiving.  The packaging of the Products is uniformly made out of non-transparent, cylindrical, thin cardboard boxes so that consumers cannot see the slack-fill therein, thus giving Plaintiff and the Class the false impression that there is more food inside than is actually there.

31.     Even if Defendant's net weight disclosures are accurate, such does not eliminate this basic deception.  The FDA has confirmed this in unequivocal terms:

> FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading. [emphasis added] 58 FR 64123, 64128

> Section 403(e) of the act requires packaged food to bear a label containing an accurate statement of the quantity of contents. This requirement is separate and in addition to section 403(d) of the act. To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant. In fact, Congress stated (S. Rept. No. 493, 73d Cong., 2d sess. 9 (1934)) in arriving at section 403(d) of the act that that section is "intended to reach deceptive methods of filling where the package is only partly filled and, despite the declaration of quantity of contents on the label, creates the impression that it contains more food than it does." Thus, Congress clearly intended that failure to comply with either section would render a food to be misbranded. [emphasis added] 58 FR 64123, 64128-64129.

32.     While consumers may have come to expect significant slack-fill in boxed popcorn products, this too does not eliminate Defendant's deception.  The FDA has stated that "although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 FR 64123, 64131

**Plaintiff and the Class Reasonably Relied on the Size of the Products' Packaging as a Material Indicator of How Much Food They Were Purchasing**

33.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products contained non-functional slack-fill as set forth herein, and would not have bought the Products at the given prices had they known the truth about them.

34.     Defendant's Products' packaging was a material factor in Plaintiff' and Class members' decisions to purchase the Products because reasonable consumers would attach importance to the quantity of food they believe they are purchasing.

35.     Plaintiff and the Class reasonably relied on the size of the Products' packaging to infer how much food they were purchasing and reasonably believed that the boxes were filled as closely to capacity as functionally possible.   The FDA has explained why such reliance is reasonable:

> Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container. Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label." [emphasis added] 58 FR 64123, 64131

36.     Congress recognized that the size of a package is in and of itself a kind of sales pitch, even if not made with words or numbers. Thus, consumers can reasonably rely on packaging size as a representation of quantity regardless of whatever is printed on the label.  And manufacturers can be held responsible for non-functional slack-fill regardless of whatever else they say.

37.    Defendant might argue that Plaintiff and the Class should not have relied on the packaging's size to infer its contents because they could have manipulated the packaging in order to acquire a sense of the slack-fill therein (i.e., shaking the package to hear the popcorn rustling), but the FDA has stated that such manipulation cannot be reasonably expected of consumers:

> FDA advises that the entire container does not need to be transparent to allow consumers to fully view its contents, i.e., a transparent lid may be sufficient depending on the conformation of the package. On the other hand, FDA finds that <u>devices, such as a window at the bottom of a package, that require consumers to manipulate the package, e.g., turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container</u>. FDA finds that such devices do not adequately ensure that consumers will not be misled as to the amount of product in a package. Therefore, such foods remain subject to the requirements in § 100.100(a) that slack-fill in the container be functional slack-fill. [emphasis added] 58 FR 64123, 64128

The FDA was here contemplating a scenario in which manipulating a package might permit an accurate visual estimate of its contents.  This is clearly impossible in the case of Defendant's wholly non-transparent packaging, which can only provide audial or tactile clues as to the Products' slack-fill. But the same basic principle applies: the possibility that manipulating a package might yield additional insight into its contents does not exculpate non-functional slack-fill (just as accurate net weight disclosures do not).

**<u>Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Conduct</u>**

38.    Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Products than Defendant represented they would be receiving.  Since they would not have agreed to this exchange had they known the truth, they were deprived of the benefit of their bargain, receiving less popcorn than was promised to them through the size of the Products' packaging.  In order for Plaintiff and Class members to be made whole, they must be compensated in an amount equal to the product of the percentage of non-

functional slack-fill in the Products and the retail purchase price paid (% non-functional slack-fill multiplied by purchase price).

39.     *See Lazaroff v. Paraco Gas Corp.*, 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised...Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349."); *Waldman v. New Chapter*, Inc., 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("Plaintiff alleges that, had she understood 'the true amount of the product,' she 'would not have purchased' it... Thus, Plaintiff has properly alleged injury. Accordingly, Plaintiff's § 349 claim survives Defendant's motion); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in his Complaint, Plaintiff seeks monetary damages on the grounds that he "would not have paid the premium price he paid" to buy the Products had he "known the truth."... Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.")

## CLASS ACTION ALLEGATIONS

40.     Plaintiff BROWN brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All New York residents who made retail purchases of Products during the applicable limitations period, and/or such subclass as the Court may deem appropriate. ("the Class").

41.     The proposed Class exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned

42.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class in that Plaintiff has no interests antagonistic to those of the other members of the Class. Plaintiff has retained experienced and competent counsel.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law and fact to the Class are:

i. Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

ii. Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

iii. Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Products;

iv. Whether Defendant's labeling, packaging, marketing, advertising and/or selling of its Products constituted an unfair, unlawful or fraudulent practice;

v. Whether the packaging of the Products during the relevant statutory period constituted unlawful non-functional slack-fill;

vi. Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vii. Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

viii. Whether Defendant purposely chose non-transparent Product packaging so that Plaintiff and Class members would not be able to see the amount of slack-fill contained in the Product;

ix. The appropriate measure of damages and/or other relief;

x. Whether Defendant has been unjustly enriched through its scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

xi. Whether Defendant should be enjoined from continuing its unlawful practices.

47.    The membership of the Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

48.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

49.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

50.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

51.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

52.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

53.     Plaintiff BROWN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

54.     Plaintiff BROWN brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

55.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

56.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

57.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packaging containing non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations

promulgated pursuant to the FDCA § 403 (21 U.S.C. 343(d)). Under New York Agm. Law §

201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or

filled as to be misleading."

58.     The foregoing deceptive acts and practices were directed at consumers.

59.     Defendant should be enjoined from packaging its Products with non-functional

slack-fill as described above pursuant to NY GBL § 349, New York Agm. Law § 201, and the

FDCA, 21 U.S.C. § 343(d).

60.     Plaintiff BROWN, on behalf of herself and all others similarly situated,

respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this

proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this

Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

61.     Plaintiff BROWN realleges and incorporates herein by reference the allegations

contained in all preceding paragraphs, and further alleges as follows:

62.     Plaintiff BROWN brings this claim individually and on behalf of the other

members of the New York Class for violations of NY GBL § 349.

63.     Any person who has been injured by reason of any violation of NY GBL § 349

may bring an action in her own name to enjoin such unlawful acts or practices, an action to

recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court

may, in its discretion, increase the award of damages to an amount not to exceed three times the

actual damages up to one thousand dollars, if the court finds the defendant willfully or

knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

64.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Products so that it appears to contain more in the packaging than is actually included.

65.    The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packages containing non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA (21 U.S.C. § 343(d)) in that said Products are misbranded.

66.    The foregoing deceptive acts and practices were directed at consumers.

67.    Plaintiff BROWN and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff BROWN and the other Class members suffered monetary losses from the purchase of Products, i.e., receiving less than the capacity of the packaging due to non-functional slack-fill in the Products. In order for Plaintiff BROWN and Class members to be made whole, they must receive a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in it.

## COUNT III

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)
(FALSE ADVERTISING)

68.    This claim is brought on behalf of Plaintiff BROWN and members of the Class against Defendant.

69.    Plaintiff BROWN realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

70.    Defendant has been and/or is engaged in the "conduct of...business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

71.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

72.    Pursuant to the FDCA as implemented through 21 C.F.R. § 100.100, package size is an affirmative representation of quantity.  Thus, the non-functional slack-fill in Defendant's Products constituted false advertising as to the quantity of popcorn contained therein.  Defendant caused this false advertising to be made and disseminated throughout New York.  Defendant's false advertising was known, or through the exercise of reasonable care should have been known, by Defendant to be deceptive and misleading to consumers.

73.    Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

74.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its misrepresentations and/or omissions regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

75.    Plaintiff BROWN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Products, Plaintiff BROWN and members of the Class relied on the misrepresentations regarding the quantity of the Products that was actually food rather than non-

functional slack-fill. Those representations were false and/or misleading because the Products contains substantial hidden non-functional slack-fill. Had Plaintiff and the Class known this, they would not have purchased the Products or been willing to pay as much for them.

76.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff BROWN and members of the Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT IV**

**COMMON LAW FRAUD**

77.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

78.     Through its product packaging, Defendant intentionally made materially false and misleading representations regarding the quantity of popcorn that purchasers were actually receiving.

79.     Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations and did not know the truth about the Products at the time they purchased it.

80.     Defendant knew of its false and misleading representations. Defendant nevertheless continued to promote and encourage customers to purchase the Products in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

81.     Had Plaintiff and the Class known the actual amount of food they were receiving, they would not have purchased the Products.

82.    Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

83.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund consisting of the percentage of the purchase price equal to the percentage of non-functional slack-fill in the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BROWN, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

(A)    For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

(B)    For an Order declaring that Defendant's conduct violates the statutes referenced herein;

(C)    For an Order finding in favor of Plaintiff and members of the Class;

(D)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)    For prejudgment interest on all amounts awarded;

(F)    For an Order of restitution and all other forms of equitable monetary relief;

(G)    For injunctive relief ordering Defendant to repackage the Products without non-functional slack-fill;

(H)    For an Order awarding Plaintiff and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)    For such other and further relief as the Court deems just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff BROWN, on behalf of herself and all others similarly situated, hereby demands a jury trial on all claims so triable.


Dated: February 10, 2017

Respectfully submitted,


/s/ C.K. Lee
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*